**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AXION POWER BATTERY MANUFACTURING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 02: 07-cv-0224 |
| T&L SALES, INC.; BATTERYXPRESS, INC.; TURBOSTART MIDWEST, TURBOSTART BATTERYXPRESS, and WILLIAM STOUT, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

February 13, 2009

Presently before for the Court for disposition are the following:

• MOTION FOR PARTIAL SUMMARY JUDGMENT, with brief in support, filed by Defendants William Stout and BatteryXpress, Inc. (Document Nos. 39 and 40), and the Memorandum of Law in Opposition filed by Plaintiff, Axion Power Battery Manufacturing, Inc. (Document No. 49); and

• MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Plaintiff, Axion Power Battery Manufacturing, Inc. (Document Nos. 45 and 46); the Memorandum of Law in Opposition filed by Defendants (Document No. 50), and the REPLY MEMORANDUM filed by Axion Power Battery Manufacturing, Inc (Document No. 55).

For the reasons that follow, the motions will be denied.

# Background

Plaintiff, Axion Power Battery Manufacturing, Inc. ("Axion"), is a corporation engaged in the business of manufacturing and selling batteries and battery products. Axion is the owner of three Registered Trademarks which cover the word TURBOSTART and design elements (collectively referred to as the "TurboStart Marks").

Prior to October of 2004, Defendant William Stout, the President of Defendant T&L Sales, Inc., was an authorized distributor of the TurboStart Marks, by agreement with an entity known as New Castle Battery Manufacturing Co. ("NCB"). Defendants T&L Sales, Inc., t/d/b/a/ TurboStart Midwest and TurboStart BatteryXpress, were permitted by NCB to sell batteries labeled with the TurboStart Marks.

In October 2004, T&L Sales, Inc., had an outstanding account balance of $89,013.82 owed to NCB. On October 8, 2004, NCB sent the following notice to T&L Sales, Inc., regarding the use of the TurboStart Marks:

> By this correspondence, NCB demands that TM make immediate payment to NCB in the amount of $89,013.82.
>
> NCB also reminds TM that, without NCB's authorization, TM may not market and/or sell goods bearing, utilizing and/or referencing the TurboStart trademark, the rights to which are exclusively owned by NCB. As long as TM is delinquent on its account, NCB cannot extend such authorization. This correspondence shall serve as official notice to TM that it does not currently have NCB's authorization to, in any way, utilize the TurboStart trademark. Furthermore, NCB is not willing to consider any further trademark use authorization until TM's outstanding account balance is paid in full to NCB. . . . .

Pl's Exhibit 5 (emphasis added).

At the time Defendants received the demand letter, NCB owed warranty claims to T&L Sales that equaled at least as much as, if not more than, the outstanding balance on the

NCB invoices.  After receiving the demand letter for the outstanding balance, William Stout called the owner of NCB, Steve Hoye, to discuss how to cover the outstanding warranty issues. Ryan Stout also had a conversation with Steve Hoye on how NCB intended to cover warranty claims if NCB ceased operation of its business.  According to the deposition testimony of William Stout, T&L Sales paid $10,000 to NCB "as good faith to start negotiations on trying to get this taken care of."  Wm. Stout Deposition, at 66.

In November 2004, NCB declared bankruptcy.  Defendants contend that William Stout had multiple conversations with Paul Rennie, the attorney "attempting to collect the money on behalf of NCB" and that Mr. Rennie told Stout not to "pay the money if T&L Sales had outstanding warranty claims and that NCB was not going to pursue further action to collect the money."   According to Defendants, William Stout also spoke with a representative of National City Bank, the trustee of NCB,[1] and that the representative gave permission to Stout to use the TurboStart name.

On or about February 10, 2006, Axion purchased certain assets, including the TurboStart Marks, and equipment and other assets of NCB from National City Bank, the trustee for NCB.  On October 20, 2006, counsel for Axion sent the following letter to T&L Sales, in which Axion demanded that Defendants immediately cease and desist all uses of the marks:

> By letter dated October 7(sic), 2004, NCB put you on notice that
> TurboStart Midwest's use of the TURBOSTART® mark was unauthorized
> and that authorization would not be considered until TurboStart Midwest's
> outstanding account balance in the amount of $89,013.82 was paid in full

---

[1]     National City Bank took over the operations of New Castle Battery and then sold the TurboStart Marks to Axion in 2006.

3

to NCB.  That balance was never paid and TurboStart Midwest was never granted authorization to use the TURBOSTART® mark. . . . .

Defs' Exh. 10.

In response to this letter, Defendants contend that they requested a reasonable period of time in which to use up its existing battery inventory bearing the TurboStart Mark on the label.  It took T&L Sales until the Spring of 2007 to design new labels,  remove the TurboStart Mark from their existing battery inventory, and to reclaim batteries from stores that were already on shelves.

On February 27, 2007, Axion initiated this lawsuit by the filing of a five-count Complaint in which it alleges that each of the Defendants have infringed upon the TurboStart Marks.  Axion has also brought a claim for conversion against Defendants for failure to make payments pursuant to a Bailment Agreement.  Defendants contend that by March 15, 2007, one month after suit was filed, T&L Sales had ceased use of the TurboStart name when answering the phone, had removed the signs from their building, and had removed the TurboStart name from invoices, stationery, and their web site.

Despite numerous factual disputes, the parties have filed cross motions for summary judgment.

### Discussion

A.    Motion for Partial Summary Judgment filed by Defendants, William Stout and BatteryXpress, Inc.

1.    *Individual Liability Against William Stout*

Defendants argue that Plaintiff has failed to meet its burden with respect to its claim that Defendant William Stout is personally liable as an alter ego for T&L Sales, Inc.  However,

as Plaintiff correctly notes, Defendant Stout has not been named as a defendant because of his role as an officer of T&L Sales, Inc., but rather because Defendant Stout allegedly "actively participated in and directed T&L Sales, Inc., to infringe upon the Marks of the Plaintiff."  Br. at 3.

"The plain language of the sections of the Lanham Act addressing trademark infringement and unfair competition create individual liability for damages under the Act because both sections begin with the language 'Any person who . . . .' " *Heartland Payment Systems, Inc. v. Merchant Services of America Corp.*, 2006 WL 3779764, *5 (D.N.J. 2006) (citing 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)).  Under the Lanham Act, an employee is not shielded from liability solely because the infringing actions were within the scope of his or her employment.  *Metromedia Steakhouses Co., L.P. v. Resco Mgmt., Inc.*, 168 B.R. 483, 486 (D.N.H. 1994).  "The fact that the persons . . . are acting for a corporation . . . may make the corporation liable under the doctrine of respondeat superior.  It does not relieve the individuals of their responsibility."  *Mead Johnson & Co. v. Baby's Formula Serv., Inc.,* 402 F.2d 19 (5th Cir. 1968) (holding corporate officer individually liable for trademark infringement).

A trademark is infringed by an individual who "performs the act or does the things that the patent or trademark law protects against . . . . [I]f there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done."  *Id., see Bradywine Mushroom Co. v. Hockessin Mushroom Prods, Inc.*, 682 F. Supp. 1307, 1312 (D. Del. 1988) (denying motion for summary judgment as to individual defendant because there was sufficient evidence that she was an "active participant" in the trademark infringing sales).

Here, Plaintiff alleges that Defendant "Stout, as the sole shareholder and officer of T&L Sales, Inc., was the only person who could have directed T&L Sales, Inc., to infringe upon the trademarks of the Plaintiff by directing the continued use of the TurboStart Marks after New Castle Battery terminated its license to do so." Pl's Br. at 4.

The Court has little difficulty, given the case law, in denying the motion for summary judgment as to Defendant Stout. The personal involvement and liability, if any, of William Stout in the infringing activities should be left to the trier of fact.

2.     *BatteryXpress, Inc.*

Defendants have admitted that T&L Sales, Inc., does business as BatteryXpress from its principal place of business in Yorktown, Indiana. The named defendant in this matter, however, is BatteryXpress, Inc., an independently owned and operated retail outlet that is located in Bloomington, Indiana. Ryan Stout, the son of William Stout, is the sole owner of BatteryXpress, Inc., and has given T&L Sales, Inc., permission to use the BatteryXpress name by virtue of an agreement. Accordingly to Defendants, the only relationship between BatteryXpress, Inc., and T&L Sales, Inc., t/d/b/a/ BatteryXpress, is that BatteryXpress, Inc., purchases batteries from T&L Sales, Inc.

Axion paints a very different picture of the relationship between BatteryXpress, Inc., and T&L Sales, Inc. According to Axion, BatteryXpress, Inc., is liable for its own acts and for the acts of T&L Sales, Inc., as the two entities essentially acted as one single enterprise. As Axion points out, however, "[w]hether BatteryXpress, Inc., should be liable for the acts of its sister corporation under a 'single enterprise theory' of liability should be left to the trier of fact

6

and not determined as a matter of law by way of a partial motion for summary judgment." The Court agrees. Therefore, the motion for partial summary judgment as to BatteryXpress, Inc., will be denied.

B.      Motion for Summary Judgment filed by Plaintiff

Plaintiff has moved for summary judgment on its trademark infringement and unfair competition claims[2] arguing that no genuine issues of material fact exist relating to the claims of the Plaintiff and the Defenses of the Defendants.

Plaintiff argues that it is entitled to summary judgment because there is no question that Defendants used the TurboStart Marks after the license to do so had been revoked by NCB. In response, Defendants argue that the equitable defenses of doctrine of laches and/or acquiescence bars Axion from recovering. Each of these arguments is factual in nature.

Defendants argue that the doctrine of laches applies because there was an

---

[2]     Plaintiff has also brought a claim for conversion against Defendants based on a 2002 Bailment Agreement between NCB and Defendants, which allowed for T&L Sales, Inc. to use certain racking and charging equipment owned by NCB. *See* Count V of the Complaint. However, Axion did not seek summary judgment on this claim. The summary judgment record contains correspondence from counsel for Defendants to counsel for Axion dated March 15, 2007, which states, in pertinent part as follows:

> T&L Sales has certain pallet racking (20 + years old) and a battery charger (approximately 25 years old) which was loaned to it by New Castle. If Axion wants the racking and charger returned, T&L Sales is prepared to make these items available for Axion to pick up. . . . .

Defs' Exhibit 3. Accordingly, it is not clear to the Court from the summary judgment record whether Count V of the Complaint is still viable.

inexcusable delay by Axion in filing this lawsuit, which resulted in prejudice to the Defendants. *Univ. of Pittsburgh v. Champion Prods., Inc.,* 686 F.2d 1040, 1044 (3d Cir. 1982). Although NCB first notified Defendants to cease using the marks by letter dated October 8, 2004, suit was not filed until February 21, 2007. Furthermore, between October 8, 2004 and October 20, 2006, Defendants contend that they legitimately thought they had a right to use the TurboStart Marks as granted by NCB based on the representations made to William Stout by the agent for NCB.

Additionally, Defendants contend that they are able to meet the requirements of acquiescence by showing affirmative acts which conveyed implied consent to T&L Sales that it could use the TurboStart Marks. According to Defendants, neither NCB nor anyone claiming to have rights to the TurboStart Marks pursued any action to stop Defendants from continuing to use the marks until October 20, 2006. Again, according to Defendants, they legitimately thought that they had a right to use the TurboStart Marks based on William Stout's multiple conversations with Paul Rennie, who allegedly told Stout that T&L Sales should not pay the outstanding balance if T&L Sales had outstanding warranty claims and that NCB was not going to pursue further action to collect the money. Additionally, William Stout spoke with a representative of National City Bank, the trustee of NCB, who allegedly gave Stout permission to use the TurboStart name. Defendants contend that based on Stout's conversations with Attorney Rennie and National City Bank, and the inaction on the part of NCB, Defendants had reason to believe that they were authorized to continue to use the TurboStart name.

It is difficult for the Court, as a matter of law, to find for Plaintiff on summary judgment, especially when the Defendants have raised the affirmative defenses of laches and acquiescence.   Such findings are fact oriented.

## Conclusion

For the aforementioned reasons, the Motion for Partial Summary Judgment filed by Defendants William Stout and BatteryXpress, Inc., will be denied and the Motion for Summary Judgment filed by Plaintiff, Axion Power Battery Manufacturing, Inc., will be denied.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AXION POWER BATTERY       )
MANUFACTURING, INC.,        )
                                   )
                Plaintiff,      )
                                   )
          v.                  )     02: 07-cv-0224
                                   )
T&L SALES, INC.; BATTERYXPRESS,  )
INC.; TURBOSTART MIDWEST,     )
TURBOSTART BATTERYXPRESS, and  )
WILLIAM STOUT,              )
                                   )
                Defendants.    )

**ORDER OF COURT**

AND NOW, this 13th day of February, 2009, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(1)     The Motion for Partial Summary Judgment filed by Defendants William Stout and BatteryXpress, Inc. is **DENIED**; and

(2)     The Motion for Summary Judgment filed by Plaintiff, Axion Power Battery Manufacturing, Inc., is **DENIED**.


It is further **ORDERED** that Plaintiff shall file its Pretrial Narrative Statement on or before **March 5, 2009**, and Defendants shall file their Pretrial Narrative Statement on or before **March 25, 2009.**

A pretrial conference is scheduled on **Friday, March 27, 2009, at 9:00 a.m.** in Courtroom 6C. The conference shall be attended by an authorized representative of each party, together with trial counsel for each party.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc: Alan S. Fellheimer, Esquire
Fellheimer & Eichen
Email: alan@fellheimer.net

John J. Jacko, III, Esquire
Fellheimer & Eichen
Email: john@fellheimer.net

Debra Z. Anderson, Esquire
Meyer, Unkovic & Scott LLP
Email: dza@muslaw.com

James R. Mall, Esquire
Meyer, Unkovic & Scott
Email: jrm@muslaw.com